**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICIA BROWNE ARTHUR, Derivatively on Behalf of FANNIE MAE f/k/a FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DANIEL H. MUDD, ROBERT J. LEVIN, MICHAEL J. WILLIAMS, THOMAS A. LUND, PETER S. NICULESCU, WILLIAM B. SENHAUSER, KENNETH J. BACON, LINDA K. KNIGHT, ROBERT T. BLAKELY, BETH A. WILKINSON, DAVID C. HISEY, STEPHEN M. SWAD, H. PATRICK SWYGERT, STEPHEN B. ASHLEY, JOE K. PICKETT, LESLIE RAHL, JOHN K. WULFF, GREG C. SMITH, BRIDGET A. MACASKILL, DENNIS R. BERESFORD, BRENDA J. GAINES, KAREN N. HORN, LOUIS J. FREEH, JOHN C. SITES, JR., THOMAS P. GERRITY and KENNETH M. DUBERSTEIN,<br><br>　　　　　Defendants,<br>　-and-<br><br>FANNIE MAE f/k/a FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Federally chartered corporation,<br><br>　　　　　Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:07-cv-02130-PLF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT FANNIE MAE'S RESPONSE TO PLAINTIFF'S OBJECTION TO**
**<u>NOTICE OF RELATED CIVIL CASES</u>**

Fannie Mae, on behalf of all twenty-six individually named defendants in the above-captioned action (collectively, "Defendants"), eight of whom are also named as defendants in *In re Fannie Mae Derivative Litig.*, Case No. 04-1783, *Kellmer v. Raines, et al.*, Case No. 07-1173, and/or *Middleton v. Raines, et al.*, Case No. 07-1221 (collectively, the "Prior Actions"), hereby

respectfully submits this response to Plaintiff Arthur's objection to Defendants' Notice of Designation of Related Civil Cases Pending in This or Any Other United States Court. The Court should find this action related to the Prior Actions pending before Judge Leon and request that the Calendar Committee reassign it to him.

Plaintiff Arthur argues that her action and the Prior Actions involve entirely different facts, claims, parties, relevant periods, and legal theories. (Pl.'s Obj. at 2.) This is simply not true. For one thing, there is factual overlap between *Arthur* and the Prior Actions. Indeed, if Plaintiff's complaint survives Defendants' motions to dismiss, Plaintiff's factual allegations will require consideration of many of the very same documents, and testimony from the very same witnesses, that are central to not only the Prior Actions, but also the many securities, ERISA, and malpractice cases coordinated with the Prior Actions in an MDL proceeding pending before Judge Leon. Sixteen of the 26 Defendants in this action have been identified as witnesses in the MDL proceeding. Many of them are being called to testify solely about their role in Fannie Mae's restatement, which is central to the claims in both Plaintiff's action and the actions pending before Judge Leon. Most if not all of these witnesses will likely be asked to testify about issues of fact at the heart of this lawsuit. Testimony from these witnesses would also form the evidentiary basis of one of Fannie Mae's core defenses in this action – that Fannie Mae's disclosure practices from May 2006 through August 2007 were subject to extraordinary scrutiny, resulting from the combined efforts of thousands of Fannie Mae employees, thousands of accountants from three of the Big Four accounting firms, and thousands of independent contractors lending their expertise. It would be far less of a burden on Plaintiff to participate in coordinated discovery than it would be for these witnesses to testify twice about the same facts

and circumstances arising out of the same events – Fannie Mae's restatement, catch-up, and get current efforts.

This action also raises the same threshold legal issues as the Prior Actions. Fannie Mae has fully briefed and argued a threshold legal issue in the Consolidated Derivative Action that is also an issue in Plaintiff's action – whether a shareholder derivative action against Fannie Mae and its directors can exist at all. Judge Leon did not need to reach that argument when he dismissed the Consolidated Derivative Action, but it would be ripe for decision by Judge Leon should Fannie Mae decide to renew it in this action, any of the Prior Actions still pending before him,[1] or any future-filed shareholder derivative action against Fannie Mae.

Plaintiff's shareholder derivative action and the consolidated shareholder derivative action, *In re Fannie Mae Derivative Litigation* (the "Consolidated Derivative Action"), one of the three Prior Actions currently before Judge Leon, share another common threshold legal issue. As in the Consolidated Derivative Action, in order for this Plaintiff's case to proceed, she must show that Fannie Mae's Board of Directors ("Board") lacks sufficient independence and disinterestedness to take the actions that Plaintiff requests in her complaint. How difficult this will be is suggested by Judge Leon's order, entered in May of last year, dismissing the Consolidated Derivative Action for failure to make demand pursuant to Fed. R. Civ. P. 21, and specifically finding that eight of the officer and director defendants in that action (also named in *Arthur*) are independent and disinterested.

It would strain the resources of this Court and the Defendants should this Court be required to take the steps necessary to familiarize itself with and reconsider either of these

---

[1] Fannie Mae has not yet renewed its motion in the two Prior Actions currently pending before Judge Leon because it has moved to dismiss them on other grounds. Specifically, Fannie Mae has moved to dismiss the *Middleton* action for lack of standing and the *Kellmer* action for lack of subject matter jurisdiction and on *res judicata* grounds. Those motions are pending before Judge Leon.

threshold legal issues where they have been fully briefed, argued, and (with respect to eight defendants common to *Arthur* and the Prior Actions) decided in the Consolidated Derivative Action. For these and the reasons stated below, Fannie Mae and the 26 individually named officer and director Defendants respectfully request that the Court find this action related to the Prior Actions.

## STATEMENT OF FACTS

On December 22, 2004, Fannie Mae filed a Form 8-K with the Securities and Exchange Commission ("SEC") indicating that the Company's financial statements for the periods from January 2001 through the second quarter of 2004 were prepared applying accounting principles that the SEC had determined were not compliant with GAAP. In light of the SEC's determination, the Company's Form 8-K warned investors not to rely on the previously issued financials because Fannie Mae would be restating them. Fannie Mae's December 22, 2004 public disavowal of its prior financial statements represented the culmination of a series of events that began with the decision by Fannie Mae's regulator, the Office of Federal Housing Enterprise Oversight ("OFHEO") in June of 2003 to commence a special examination into Fannie Mae's accounting policies and controls.

On September 22, 2004, OFHEO publicly released its Report of Findings to Date ("Interim Report"). Although the Interim Report focused on Fannie Mae's misapplication of two accounting standards – FAS 91 and FAS 133 – it also clearly indicated that OFHEO believed that Fannie Mae's financial statements embodied "pervasive" misapplications of GAAP. Within days of OFHEO's September 22, 2004 release of its Report of Findings to Date, putative derivative plaintiffs began filing shareholder derivative actions. In all, ten different plaintiffs,

including Patricia Arthur, the plaintiff in this action,[2] commenced eleven shareholder derivative actions[3] and a books and records action under title 8, section 220 of the Delaware Code.[4] Other plaintiffs began filing securities class action and ERISA class action cases against Fannie Mae during this timeframe. In December 2004, Fannie Mae moved the Judicial Panel on Multidistrict Litigation to create a coordinated MDL proceeding before Judge Leon. The JPML granted Fannie Mae's request on May 17, 2005. The MDL proceeding is captioned *In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litig.*, MDL No. 1668.[5]

In February 2005, Judge Leon consolidated the pending shareholder derivative actions into *In re Fannie Mae Derivative Litig.*, Case No. 04-1783. He dismissed them for failure to make demand pursuant to Fed. R. Civ. P. 23.1 on May 31, 2007.[6] Just over one month later, two putative derivative plaintiffs filed two additional shareholder derivative actions – *Kellmer v. Raines, et al.*, Case No. 07-1173, and *Middleton v. Raines, et al.*, Case No. 07-1221 – which are currently pending before Judge Leon. Discovery in the MDL proceeding pending before Judge Leon is coordinated. By virtue of Judge Leon's orders, all parties to all proceedings currently

---

[2] *See Arthur v. Raines, et al.*, C.A. No. 1:04-8294 (S.D.N.Y., filed Oct. 20, 2004).

[3] *Rudoff v. Raines, et al.*, C.A. No. 1:04-07688 (S.D.N.Y., filed Sept. 28, 2004); *Horn v. Raines, et al.*, C.A. No. 1:04-1783 (D.D.C., filed Oct. 15, 2004); *Arthur v. Raines, et al.*, C.A. No. 1:04-8294 (S.D.N.Y., filed Oct. 20, 2004); *Richard Mandel Trust v. Howard, et al.*, C.A. No. 1:04-1837 (D.D.C., filed Oct. 20, 2004); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust, etc. v. Raines, et al.*, C.A. No. 1:04-1852 (D.D.C., filed Oct. 25, 2004); *Rudoff v. Raines, et al.*, C.A. No. 1:04-1960 (D.D.C., filed Nov. 10, 2004); *Wayne County Employees' Ret. Sys. v. Raines, et al.*, C.A. No. 1:04-2228 (D.D.C., filed Dec. 23, 2004); *The Lillian Winston 1993 Trust v. Raines, et al.*, C.A. No. 1:05-0010 (D.D.C., filed Jan. 5, 2005); *Kellmer v. Marron, et al.*, C.A. No. 1:05-0037 (D.D.C., filed Jan. 5, 2005); *Bader v. Raines, et al.*, C.A. No. 2:05-0175 (D.N.J., filed Jan. 10, 2005); *Stern v. Raines, et al.*, C.A. No. 1:05-0352 (D.D.C., removed Feb. 18, 2005).

[4] *Kellmer v. Fannie Mae*, C.A. No. 1:04-2084 (D.D.C., filed Dec. 1, 2004).

[5] In addition to the Prior Actions, the cases pending before Judge Leon as part of the coordinated MDL proceeding, *In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litig.*, MDL No. 1668, are: a consolidated securities class action case, *In re Fannie Mae Securities Litig.*, Case No. 04-1639 (RJL); two individual securities actions, *Evergreen Equity Trust, et al. v. Fannie Mae, et al.*, Case No. 06-082 (RJL), and *Franklin Managed Trust, et al. v. Fannie Mae, et al.*, Case No. 06-139 (RJL); a consolidated ERISA class action case, *In re Fannie Mae ERISA Litig.*, Case No. 04-1784; and an accounting malpractice case brought by Fannie Mae against its former auditor, *Fannie Mae v. KPMG*, Case No. 06-2111 (RJL).

[6] Plaintiffs in that action have appealed Judge Leon's dismissal order to the D.C. Circuit, where it is currently pending.

have access to an electronic database containing over 27 million pages of documents, including documents related to the restated financial statements that Plaintiff challenges in this action.

## ARGUMENT

Plaintiff's action raises issues of law and fact common to both the Prior Actions and the securities, ERISA, and malpractice actions pending in a coordinated MDL proceeding before Judge Leon. Plaintiff's case and those pending before Judge Leon raise common factual issues concerning 1) Fannie Mae's financial reporting before and after December 22, 2004, when Fannie Mae announced that it would be restating its previously filed financial statements; 2) whether certain members of Fannie Mae's Board of Directors were disinterested and independent and exercised valid business judgment; and 3) whether Fannie Mae fully and fairly disclosed its exposure to potential losses related to changes in the subprime market during a time when its financial disclosure practices were being constantly reviewed by thousands of internal and external accountants and consultants. Although Plaintiff attempts to minimize the significance of the third claim in her response (*see* Pl.'s Obj. at 4), it calls into question the process through which Fannie Mae restated its prior financial results, which is also squarely at issue in the cases that comprise the coordinated MDL proceeding pending before Judge Leon.[7]

The parties to the cases pending before Judge Leon are participating in coordinated discovery. Depositions are ongoing, and many of the witnesses that Plaintiff would likely seek to depose (should her case survive a motion to dismiss) are scheduled to testify in the coordinated proceeding. Their testimony will unavoidably address Plaintiff's core theory that Fannie Mae used the process of restating its financial results from 2004 and prior years to mask

---

[7] Plaintiffs in the securities class action and two related individual securities actions, for example, argue that Fannie Mae used its restatement process to slowly disclose the magnitude of the prior alleged fraud. (*See* OPERS/STRS Compl. ¶¶ 62-96.) Plaintiff in one of the Prior Actions, *Kellmer v. Raines, et al.*, makes the same allegations as this Plaintiff – that Fannie Mae did not fully and fairly disclose its exposure to potential losses related to changes in the subprime market. (*See Kellmer III* Am. Compl. ¶¶ 28-30.)

developing losses in the subprime sector. That testimony will show the unprecedented amount of scrutiny under which Fannie Mae operated during its restatement, catch up, and get current efforts. During that time, Fannie Mae employed thousands of accountants from three of the Big Four accounting firms, as well as thousands of independent contractors to assist them in evaluating Fannie Mae's financial reporting, accounting controls, risk management practices, and disclosure controls. Importantly, Fannie Mae will proffer this testimony as evidence not only in the securities class action and malpractice action pending before Judge Leon, but also in this case – to establish that Fannie Mae did not "hide" any information about the financial health of its portfolio during the time period about which Plaintiff complains. Just as it would be burdensome for potential witnesses to testify twice about facts arising out of the same event, it would be burdensome for two judges of this Court to separately or jointly police the discovery process. The prospect of inconsistent rulings alone would add an extra layer of complexity to already complex cases. For these reasons, Plaintiff's case should be reassigned to Judge Leon so that all parties can avail themselves of the factual record that has been and is continuing to be created in the coordinated MDL proceeding pending before him.

     Judge Leon has received briefing and heard argument on the issue of whether a shareholder derivative cause of action can be maintained against Fannie Mae and its directors, consistent with federal law. This argument is currently ripe for decision should Fannie Mae decide to renew it. Finally, Judge Leon has already ruled on one of the threshold legal issues in Plaintiff's case as to eight of the 26 named Defendants – that they are independent and disinterested.

I.   **PLAINTIFF'S CASE AND THOSE PENDING BEFORE JUDGE LEON INVOLVE COMMON ISSUES OF FACT RELATED TO FANNIE MAE'S FINANCIAL REPORTING**

Plaintiff claims that her action raises factual issues that are new and distinct from those pending before Judge Leon, but Plaintiff's contention is belied by the facts.  In fact, the allegations of at least one party to the Prior Actions directly mirror Plaintiff's allegations in this action.  Plaintiff Kellmer, one of the putative derivative plaintiffs in the Prior Actions, alleges in his complaint that "[s]ome of such investments were and/or are high-risk derivatives which were packaged and sold by intermediaries with little regard for the underlying security, all of which has subjected Fannie Mae to billions of dollars of undisclosed risk, much of which has yet to be reflected in its current financial statements."  (*Kellmer III* Am. Compl. ¶ 28.)  Kellmer also alleges that some of Fannie Mae's financial risks "have not yet been adequately quantified and/or otherwise reflected on its financial statements particularly those which reflect 'investments' in questionable securitized derivative products and the purchase of non-recourse mortgage portfolios."  (*Kellmer III* Am. Compl. ¶ 29.)  Finally, Kellmer alleges that ""[e]ven after the debacle described herein which led to the assertion of the Pre-2005 Claims, the Company continued to overstate its earnings, assets and net worth by material amounts by failing to make adequate provision for its high-risk loans and its failure to mark to market or otherwise re-value downward by material amounts its 'investments' to reflect reality."  (*Kellmer III* Am. Compl. ¶ 30.)  Other parties to the actions currently in front of Judge Leon have made their own allegations about the delay in Fannie Mae's financial reporting, claiming that it is evidence of the extent to which Fannie Mae's pre-December 2004 accounting practices departed from GAAP.  The same body of documents, and the same body of witnesses' recollections, will be used to evaluate all of these contentions.

8

Plaintiff's complaint and the Prior Actions also involve common issues of fact, and – if allowed to proceed at all – will require examination of the same documents and witnesses. One of Plaintiff's chief contentions is that Fannie Mae improperly delayed disclosure of the full extent of its exposure to the subprime mortgage crisis during the May 2006-August 2007 period. (Compl. ¶¶ 3-5). Yet this is the very period in which Fannie Mae was laboring to restate its earnings for 2004 and prior years, thus paving the way for the preparation of reports regarding its finances for subsequent years. Accordingly, the facts surrounding Fannie Mae's restatement of earnings for the pre-2005 period, and its delayed preparation of financial statements for years afterward, are central to the actions pending before Judge Leon as part of the coordinated MDL proceeding.

Numerous witnesses will testify in the coordinated MDL proceeding about their role in Fannie Mae's restatement, catch-up, and get current efforts and the extraordinary level of scrutiny to which all aspects of Fannie Mae's disclosure and financial reporting were subject. They will likely testify about the stringent accounting and disclosure controls that were put into place during the relevant period. They will likely testify about the fact that Fannie Mae retained three of the Big Four accounting firms, as well as thousands of contract accountants and consultants, to work with Fannie Mae's own employees to ensure that Fannie Mae's financial statements were beyond reproach. More importantly, they will testify that the end result of Fannie Mae's restatement, catch-up, and get current efforts was a financial reporting system that was indeed effective, contrary to Plaintiff's allegations.

These very same factual issues will also be central to one of the core defenses in this action – that far from breaching their duties to the Company or its shareholders, Fannie Mae's officers and directors undertook a Herculean effort to ensure that the Company's financial

9

statements and disclosures for the May 2006 through August 2007 period were beyond reproach. Therefore, even if Plaintiff's claims raise slightly distinct factual issues from the coordinated cases pending before Judge Leon (and Defendants do not believe they do), it cannot be disputed that the facts that will be adduced to defend Plaintiff's claims overlap completely with factual issues in the cases pending before Judge Leon.

Document production in the cases pending before Judge Leon is well underway. Parties to those cases have produced documents dated as recently as 2007, many of which are related to the facts and circumstances of the restatement effort that Plaintiff challenges. Depositions in the cases pending before Judge Leon are also ongoing. Eight of the Defendants that Plaintiff names in this action were named as defendants in the Prior Actions. Indeed, parties to the MDL proceeding currently plan to depose 16 of the 26 individual Defendants named in Plaintiff's complaint. Plaintiff will no doubt wish to depose these witnesses as well. Neither Fannie Mae nor the relevant restatement witnesses should be required to provide testimony regarding Fannie Mae's process for generating financial reports for 2006 and other years twice. Nor should the Defendants be required to undertake a separate, large-scale document production, and effectively ignore significant previous efforts that yielded a shared production database of nearly 27 million pages of relevant documents.

In short, because the identical financial reporting process lies at the core of the *Arthur* complaint and the complaints in the Prior Actions, and because discovery (if required in *Arthur*) will focus on the same documents and witnesses as in the Prior Actions, *Arthur* should be reassigned to Judge Leon.

II.     **PLAINTIFF'S CASE AND THE PRIOR ACTIONS RAISE THE SAME THRESHOLD LEGAL ISSUES**

Plaintiff styles her case as a shareholder derivative action.  There is a threshold legal issue that this action has in common with the Prior Actions and any future-filed shareholder derivative actions – whether they can proceed at all as a matter of law.  Fannie Mae has filed a motion with Judge Leon arguing that they cannot.  Specifically, Fannie Mae argued that suits concerning Fannie Mae's corporate governance may arise only under federal law and that federal law does not provide a cause of action for shareholder derivative suits against Fannie Mae and its directors.  No federal statute authorizes shareholder derivative suits generally or against Fannie Mae and its directors and shareholder derivative actions do not exist at federal common law.  The general shareholder derivative action is a creature that arises in equity.  The powers of the federal courts are limited to those granted by Congress.  In the context of equity, the courts' powers are limited to the authority provided by the Judiciary Act of 1789.  Accordingly, there can be no federal equitable action or remedy in federal court today if it was not available at the time of the Judiciary Act of 1789.  Shareholder derivative actions were not recognized until the nineteenth century.  Because shareholder derivative suits were not within the equitable powers of the Court of Chancery in 1789, Congress did not give federal courts the authority to recognize those proceedings in the Judiciary Act of 1789.  The Court thus lacks capacity to create such an equitable remedy today.

That motion is fully briefed and argued.  Judge Leon did not need to reach the issue of whether a shareholder derivative cause of action existed against Fannie Mae and its directors when he dismissed the consolidated shareholder derivative action in May 2007 because he dismissed it on other grounds – for failure to make pre-suit demand as required by Fed. R. Civ. P. 23.1.  But Judge Leon's dismissal order in the Consolidated Derivative Action indicates that

11

he has familiarized himself with the argument, and that argument is applicable with equal force to *Arthur*. It would be efficient to have that issue litigated before a member of this Court that has already devoted attention to the argument in a nearly identical context.

Plaintiff's action and the Prior Actions have another common threshold legal issue. In order for Plaintiff's case to proceed, she is required to sufficiently allege that a majority of Fannie Mae's Board lacks the independence and/or disinterestedness to take the actions that she requests. The same issue was squarely before Judge Leon in the Consolidated Derivative Action. After full briefing and argument, Judge Leon issued an opinion and order on May 31, 2007, dismissing the Consolidated Derivative Action for failure to make demand, finding that the defendants named in that action were independent and disinterested and that the plaintiffs did not meet the requirements of Fed. R. Civ. P. 23.1. Eight of the Defendants in that action are also named as defendants in this action. Of those eight, seven are or were outside directors and one is the current Chief Executive Officer of Fannie Mae. This Court should not be required to read briefs and hear argument on a legal issue that Judge Leon already decided as to some of the very parties in this case. Nor would it be fair to give this Plaintiff (purporting, like the other derivative plaintiffs, to act on behalf of Fannie Mae) the privilege of relitigating issues that Judge Leon has already decided.

## CONCLUSION

For the foregoing reasons, pursuant to LCvR 40.5, Fannie Mae and all of the individually named Defendants in this action respectfully request that the Court find this action related to the Prior Actions pending before Judge Leon and request that the Calendar Committee reassign this action accordingly.

Dated:  January 25, 2008

      /s/ Michael J. Walsh, Jr.
Jeffrey W. Kilduff (D.C. Bar No. 426632)
Robert M. Stern (D.C. Bar No. 478742)
Michael J. Walsh, Jr. (D.C. Bar No. 483296)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC  20006
T:  202/383-5300
F:  202/383-5414
***Counsel to Nominal Defendant Fannie Mae***

**CERTIFICATE OF SERVICE**

I certify that on January 25, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record in this matter who are registered on the CM/ECF.

                                                         /s/ Michael J. Walsh, Jr.
                                                        Michael J. Walsh, Jr.